Filed 4/5/23

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| ADNAN JUDEH NIJMEDDIN, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF MONTEREY COUNTY, <br><br> Respondent; <br><br> THE PEOPLE, <br><br> Real Party in Interest. | H050870 <br> (Monterey County <br> Super. Ct. Nos. SS111431A, SS120077A) |


In this petition for writ of mandate, petitioner Adnan Judeh Nijmeddin asserts that respondent Monterey County Superior Court abused its discretion in refusing to recall his prison sentence following the Department of Corrections and Rehabilitation's recommendation that he be granted compassionate release under Penal Code section 1172.2.[1] On behalf of real party in interest the People, the Attorney General has conceded that the trial court erred and that Nijmeddin is entitled to relief. We agree and will issue a peremptory writ of mandate commanding respondent court to vacate its decision denying compassionate release and immediately enter an order recalling Nijmeddin's sentence.

---

[1] Unspecified statutory references are to the Penal Code.

## I. FACTS AND PROCEDURAL HISTORY

Nijmeddin was sentenced to an indeterminate life term, consecutive to a determinate term, after a jury convicted him in 2015 of murder, attempted voluntary manslaughter, assault with a deadly weapon, and possession of narcotics. In February 2023, the Health Care Services Director of the Department of Corrections and Rehabilitation (Department) recommended that the trial court recall petitioner's sentence under the new compassionate release provisions at section 1172.2.

Assembly Bill No. 960 (2021-2022 Reg. Sess.), which added section 1172.2 to the Penal Code and amended the procedures for compassionate release requests from the Department, became effective on January 1, 2023. (Stats. 2022, ch. 744, § 3.) Such requests apply to, among others, defendants who have "serious and advanced illness with an end-of-life trajectory." (§ 1172.2, subd. (b)(1).) Section 1172.2, subdivision (b) creates a "presumption favoring recall and resentencing . . . which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety." The statute defines "unreasonable risk of danger to public safety" by reference to the term's definition in section 1170.18, subdivision (c), and is "based on the incarcerated person's current physical and mental condition." (§ 1172.2, subd. (b).) Section 1170.18, subdivision (c), in turn, provides that " 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new ['super strike' offense]," including homicide or solicitation to commit murder. (See § 667, subd. (e)(2)(C)(iv)(IV), (V); see also *People v. Valencia* (2017) 3 Cal.5th 347, 351 & fn. 3 [describing "super strike[]" felonies].)

In the recommendation to the trial court, the Health Care Services Director explained that Nijmeddin has advanced incurable pancreatic cancer, biliary adenocarcinoma, and other co-morbid medical conditions. Nijmeddin has a life expectancy of less than one year, even with chemotherapy treatment, which he has decided to forgo. Nijmeddin "requires moderate assistance with activities of daily living

2

such as feeding, bathing and dressing" and "ambulates with a walker or wheelchair due to back pain." In the recommendation, the Director noted that Nijmeddin is 65 years old, has a criminal history that includes assaults and burglaries, and committed serious prison rules violations, including violations for fighting and violent threats.

Documentation submitted with the recommendation described Nijmeddin's commitment offenses, which involved him intentionally running over a victim with his truck following a dispute over money. Other submitted documentation offered an additional summary of Nijmeddin's medical status: "[Nijmeddin] is currently experiencing significant pain. Has lost significant weight. Is still experiencing stomach bloating, nausea and difficulty to eat . . . He is very weak. [¶] . . . [¶] [Nijmeddin] cannot ambulate at this time. He is wheelchair bound. He spends 22 hrs. in bed. He is able to feed, bath[e], and dress himself. . . . No cognitive impairment."[2]

As required by section 1172.2, the trial court conducted a hearing to consider whether to recall Nijmeddin's sentence. (*Id*., subd. (c).) The bench officer who originally sentenced Nijmeddin in 2015 presided over the hearing. (See *id*., subd. (i).) Nijmeddin appeared by video.

Nijmeddin's primary care doctor testified Nijmeddin is in a wheelchair, has lost a lot of weight, cannot get onto the exam table, and "is barely able to get out of the chair." According to the doctor, Nijmeddin could probably use the toilet in the cell by himself because it was close to the bed but is likely to be bedbound soon. Nijmeddin had already missed a few medical appointments because, as the doctor was told by officers,

---

[2] Nijmeddin has asked us to file under seal what he refers to as exhibit P. Exhibit P consists of multiple exhibits that Nijmeddin provided to the trial court for consideration with a motion associated with the compassionate release recommendation. Because those exhibits were sealed by the trial court, we grant Nijmeddin's motion. (See Cal. Rules of Court, rule 8.46(b).) The clerk of this court is directed to file exhibit P under seal forthwith.

Nijmeddin was too ill to get out of bed. The doctor estimated Nijmeddin has about three to six months to live.

The chief medical examiner at the facility where Nijmeddin is housed testified that Nijmeddin likely has three to six months left to live but that "given all his comorbidities, [he] expect[s] his decline will actually be on the more rapid side." He added that "[Nijmeddin] is still a little bit ambulatory and able to at least get dressed and feed himself. But as [the primary care doctor] said, within the next likely weeks, he will likely be requiring 24-hour support."

Nijmeddin's brother testified that he works part time as an attorney for child support services and has sat as a judge pro tempore in Fresno and San Luis Obispo Counties. He had previously evicted Nijmeddin from a property he owned, but the brothers had always kept things civil between them, and there was never any violence. He observed, "I think that in the end of his life, [] [Nijmeddin] is looking to mend fences, not to create more problems." He shares his home with his elderly mother, his wife, and his 14-year-old son, and Nijmeddin has good relationships with them. He has no concerns about Nijmeddin hurting or corrupting his son. He would be Nijmeddin's caregiver and had already started the process of getting Nijmeddin hospice services and Medi-Cal coverage. His house has a safe with guns in it, but he has already arranged for it to be moved to his sister's house, which is about 10 miles away. He typically carries a concealed weapon when he leaves the house but would not do so while Nijmeddin was living with him.

After hearing the witnesses' testimony, the trial court stated it had "looked up pancreatic adenocarcinoma [and] it appeared to be cancer. It does appear to be something that is terminal. . . . [I]t seemed to confirm what the doctors were saying, which was that Mr. Nijmeddin is at end of life." The court observed, "I will say that I think Mr. Nijmeddin looks quite good. He actually looks healthier now than he did at the time of trial, interestingly. He appears to be able to move around in the wheelchair that

he is in. [¶] And as I looked back at the medical records, it appears that the wheelchair is not as a result of the pancreatic cancer. It appears the COPD and some of his other ailments that he had prior to the diagnosis of the pancreatic cancer. . . . [¶] So the wheelchair does not appear to be anything that is related necessarily to the pancreatic cancer is, I guess, my point here. [¶] And as I say, as I look at Mr. Nijmeddin, he certainly has been alert during much of these proceedings, certainly aware of what's been going on. He is sitting up. He is presenting himself as well dressed for someone in CDCR and clean, and as I say, looks better than he did some years back."

The trial court asserted that the Department had referred Nijmeddin for compassionate release because it was legally required to. It added, "[W]hile the doctors may say that he is terminally ill, he is not on that far end of the perspective where he is bedbound, in a coma, unresponsive. [¶] . . . [H]e is aware[,] he is able to move around[,] [h]e is able to be transported to different places, and he is not bedbound." The trial court observed that Nijmeddin was "criminally sophisticated and comfortable in settings where crimes occur, where criminals frequent. And one of the reasons I say is this because the underlying murder occurred down in Chinatown, and it was -- Mr. Nijmeddin was there with people who he knew and people who knew him." It characterized Nijmeddin as educated and "able to use his mental capacity to commit offenses."

The trial court declined to recall Nijmeddin's sentence on the ground that he poses an unreasonable risk of danger to public safety. The court cited a variety of concerns, including Nijmeddin's "mental acuity . . . [¶] . . . his ability to continue to commit crimes . . . his ability to pick up a phone and obtain things that he might need to go somewhere or do something to be a risk of dangerousness to others." It added that Nijmeddin "has shown his capability, ability, and willingness to pursue those types of things in a situation -- in the situation that he was convicted of."

Nijmeddin timely sought review of the trial court's denial of the request for recall of his sentence under section 1172.2.

5

## II. ANALYSIS

Nijmeddin argues that the trial court abused its discretion in denying compassionate release based on "considerations not specifically connected to any current ability to actually commit any one of the enumerated 'super strike' offenses."

This court requested a brief in preliminary opposition to the petition. In its briefing in this court, the Attorney General concedes that the trial court abused its discretion in not recalling the sentence. In addition, the Attorney General suggests that this court issue a writ of mandate to grant petitioner relief and has waived the right to notice that we might be issuing a peremptory writ of mandate in the first instance. (See *Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171 (*Palma*).)

We agree with the parties that the trial court plainly abused its discretion when it refused to recall Nijmeddin's sentence. It is undisputed that Nijmeddin has a serious and advanced illness with an end-of-life trajectory, which means he is presumptively entitled to compassionate release. (See § 1172.2, subd. (b).) This presumption can be overcome only by evidence that, based on his current physical and mental condition, he poses an unreasonable risk of committing a "super strike" offense. (See *ibid*.)

The trial court made no findings as to the unreasonable risk of commission of "super strike" offenses; it simply expressed a generalized concern about petitioner's "ability to continue to commit crimes." That Nijmeddin might possibly "pick up a phone and obtain things that he might need to go somewhere or do something" does not constitute substantial evidence that he poses an unreasonable risk of danger to public safety within the meaning of section 1172.2. (See *People v. Hoffman* (2015) 241 Cal.App.4th 1304, 1310.) Further, the statute requires that the assessment of danger be made based on Nijmeddin's "current physical and mental condition," (§ 1172.2, subd. (b)) not on whether he has in the past "shown his capability, ability, and willingness to pursue those types of things." The record lacks any substantial evidence that Nijmeddin, who is severely physically incapacitated and getting worse by the day, "is an

6

unreasonable risk of danger to public safety" (*ibid*.), as defined by section 1170.18, subdivision (c).

For these reasons, we decide the trial court abused its discretion when it declined to recall Nijmeddin's sentence.

With respect to further proceedings, the Attorney General suggests that we make our opinion ordering issuance of the writ final as to this court in less than the usual 30 days. (See Cal. Rules of Court, rule 8.490(b)(2)(A).) The Attorney General has agreed to stipulate to immediate issuance of a remittitur.

This court may only order immediate issuance of a remittitur with the stipulation of both parties. (See Cal. Rules of Court, rules 8.272(c)(1), 8.490(d).) Nijmeddin has declined to stipulate to immediate issuance of a remittitur because he does not want the matter remanded to the trial court. He instead asks this court to directly order the Department to release him immediately under the terms that he and the district attorney negotiated before the trial court conducted the hearing on the Department's compassionate release recommendation.

We decline to order the Department to release Nijmeddin from custody and to make any determination as to the terms of release in the first instance. We trust that, given the urgency of the circumstances here, the trial court will act expeditiously. Once a written opinion ordering issuance of a peremptory writ of mandate becomes final as to an appellate court, a respondent does not need to wait for issuance of a remittitur to act in accordance with that opinion. (See *Palma*, *supra*, 36 Cal.3d at p. 181.) Once remittitur issues, the writ issues and compels respondent to act. (See *ibid*.)

## III.  DISPOSITION

Let a peremptory writ of mandate issue commanding respondent court forthwith to vacate its decision to deny compassionate release, immediately enter a new order recalling petitioner's sentence under section 1172.2, and conduct further proceedings

7

consistent with this opinion and the urgency expressed herein. This opinion is made final as to this court immediately upon filing. (See Cal. Rules of Court, rule 8.490(b)(2)(A).) Should petitioner elect to stipulate to immediate issuance of remittitur, the writ shall issue immediately.

_____
                                         Danner, J.

WE CONCUR:

_____
Grover, Acting P.J.

_____
Wilson, J.

**H050870**
*Nijmeddin v. Superior Court*

Trial Court:     County of Monterey

Trial Judge:     Hon. Julie R. Culver

Counsel:         Donald E. Landis, Jr., for Petitioner.

                 Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant
                 Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney
                 General, Donna M. Provenzano, Supervising Deputy Attorney
                 General and Seth K. Schalit, Supervising Deputy Attorney General,
                 for Real Party Interest.

**H050870**
*Nijmeddin v. Superior Court*